IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| ERBEY CARRASCO,<br>　　Petitioner,<br><br>v.<br><br>WARDEN, FCI La Tuna Camp,<br>　　Respondent. | §<br>§<br>§<br>§　　Cause No. EP-24-CV-250-LS<br>§<br>§<br>§ |

## MEMORANDUM OPINION AND ORDER

Petitioner Erbey Carrasco, federal prisoner number 42673-509, challenges the computation of his sentence through a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2241. Pet'r's Pet., ECF No. 1 at 6–8. He also alleges violations of his civil rights. *Id*. at 7–8. His opposed petition is dismissed for the following reasons.

### BACKGROUND

Carrasco is a 33-year-old prisoner confined at the La Tuna Federal Correctional Institution (FCI La Tuna) in Anthony, Texas, which is within the territorial jurisdiction of this Court. *See* Bureau of Prisons, Find and Inmate, www.bop.gov/inmateloc (search for Reg. 42673-509, last visited Mar. 11, 2025); 28 U.S.C. 124(d). His projected release date is July 5, 2026. *Id*. His proposed residential reentry center (RRC) transfer date is July 9, 2025. Gov't's Resp., ECF No. 10 at 2.

Carrasco pled guilty to a one-count information charging him with conspiracy to possess with intent to distribute more than 50 grams of cocaine, in violation of 21 U.S.C. §§ 846, 841(a)(1), and (b)(1)(B). *United States v. Carrasco*, 7:21-cr-141-DC (W.D. Tex.), J. Crim. Case, ECF No. 40. He was sentenced to 84 months' confinement. *Id*. His conviction and sentence were affirmed by the Fifth Circuit Court of Appeals. *United States v. Carrasco*, No. 21-50866, 2022 WL 16657170, at *2 (5th Cir. Nov. 3, 2022).

In his § 2241 petition, Carrasco maintains that the First Step Act (FSA) mandates inmates like him should receive unlimited time in home confinement (HC) or a halfway house. Pet'r's Pet., ECF No. 1 at 7. He suggests that the Bureau of Prisons (BOP) has improperly denied him FSA Earned Time Credits (ETCs) and denied him a transfer to a Residential Reentry Center (RRC). Pet'r's Pet., ECF No. 1 at 7. He also complains about the quality of the water and the excessive heat at FCI La Tuna. *Id*. at 7. He concedes that he has not exhausted his administrative remedies. *Id.* at 3–4. He asks the Court to intervene on his behalf and order the Respondent to "COMPLY with Congressional Design in FSA and place [him] in RRC / HC to cease ongoing Civil Rights violations." *Id.* at 8.

## STANDARD OF REVIEW

A prisoner's "[c]hallenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus." *Muhammad v. Close*, 540 U.S. 749, 750 (2004) (per curiam) (citing *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973)). Accordingly, a prisoner may attack "the manner in which his sentence is carried out or the prison authorities' determination of its duration" through a petition for a writ of habeas corpus under 28 U.S.C. § 2241. *Pack v. Yusuff*, 218 F.3d 448, 451 (5th Cir. 2000) (citations omitted). To prevail, a prisoner must show that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c).

## ANALYSIS

### A. Exhaustion

"[A] federal prisoner filing a § 2241 petition must first pursue all available administrative remedies." *Fillingham v. United States*, 867 F.3d 531, 535 (5th Cir. 2017). Indeed, a federal court does "not have jurisdiction over grievances related to [the] computation of sentences and

2

sentencing credit until exhaustion of administrative review by the Bureau of Prisons." *Falcetta v. United States*, No. 20-50247, 2021 WL 5766571, at *1 (5th Cir. Dec. 3, 2021) (emphasis added) (citing *United States v. Dowling*, 962 F.2d 390, 393 (5th Cir. 1992)); *United States v. Wilson*, 503 U.S. 329, 335–36 (1992)). *See also Pierce v. Holder*, 614 F.3d 158, 160 (5th Cir. 2010) (per curiam) (agreeing with other circuits that "before the Attorney General has made a determination of a prisoner's credits, there is no case or controversy ripe for review when the prisoner challenges his credits"). Exhaustion in this context means "proper exhaustion," including compliance with all administrative deadlines and procedures. *Cf. Woodford v. Ngo*, 548 U.S 81, 90 (2006) (discussing exhaustion in the context of the Prison Litigation Reform Act).

As a result, a federal prisoner must use the BOP's multi-tiered administrative remedy program to "seek formal review of an issue relating to any aspect of [his] confinement" before pursuing judicial relief. 28 C.F.R. § 542.10(a). Initially, he must attempt to informally resolve his complaint with the staff with a Form BP-8. *Id.* § 542.13(a). If his informal attempts are unsuccessful, he must submit a written complaint to his warden on Form BP-9. *Id.* § 542.14. If he is not satisfied with the warden's response, he may appeal to his regional director on Form BP-10. *Id.* § 542.15. If still not satisfied, he may appeal to the "Central Office" using Form BP-11. *Id.*

A prisoner may consider the absence of a timely response a denial at that level and proceed to the next level. *Id*. But he may seek relief in federal court only after he has exhausted all levels of the administrative review process. *Woodford*, 548 U.S at 90–91 ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings."); *Lundy v. Osborn*, 555 F.2d 534, 535 (5th Cir. 1977) ("Only after such remedies are exhausted will the court entertain the application for relief in an appropriate case.").

There are exceptions to the exhaustion requirement which may be appropriate "where the available administrative remedies either are unavailable or wholly inappropriate to the relief sought, or where the attempt to exhaust such remedies would itself be a patently futile court of action." *Fuller v. Rich*, 11 F.3d 61, 62 (5th Cir. 1994) (citations omitted). But such exceptions apply only in "extraordinary circumstances" and a petitioner bears the burden of demonstrating such circumstances. *Id.*

Carrasco concedes that he has not challenged the calculation of his sentence through the BOP's administrative review process. Pet'r's Pet., ECF No. 1 at 3–4. His BOP records establish that he "has not submitted any administrative remedy requests during the term of his imprisonment." Resp't's Answer, Ex. 3, Decl. of Johnna Burrows, ECF No. 10-4 at 5. He claims, in conclusory fashion, that "[f]utility doctrine applies." Pet'r's Pet., ECF No. 1 at 3. But he provides no evidence to support his claim. And his projected release date is July 5, 2026, so he has ample time to pursue his administrative remedies. Therefore, there is no dispute that Carrasco has not exhausted his administrative remedies—and he has failed to establish an extraordinary circumstance justifying an exception to the exhaustion requirement.

The Court finds that Carrasco has failed to exhaust his administrative remedies, and it lacks the statutory or constitutional authority to adjudicate his dispute with the BOP. It notes that dismissal on this basis alone is warranted. *See Rivkin v. Tamez*, 351 F. App'x 876, 877–78 (5th Cir. 2009) (per curiam) (affirming dismissal of prisoner's § 2241 petition for failure to exhaust administrative remedies). But even if Carrasco's calms were properly exhausted, the Court would still not grant him the § 2241 relief he seeks.

### B.  Placement in a Residential Reentry Center or Home Confinement

Carrasco maintains that the FSA mandates that inmates like him should receive

4

"[u]nlimited Home Confinement / Halfway House time." Pet'r's Pet., ECF No. 1 at 7. He asks that the Court "[o]rder Respondents to COMPLY with Congressional Design in FSA and place [him] in RRC / HC so as to cease ongoing Civil Rights violations." *Id.* at 8.

A federal prisoner does not have "a constitutional right to be housed in a particular place or any constitutional right to early release." *Cheek v. Warden of Fed. Med. Ctr.*, 835 F. App'x 737, 740 (5th Cir. 2020). A federal prisoner's place of confinement is solely within the discretion of the BOP. *Moore v. United States Att'y Gen.*, 473 F.2d 1375, 1376 (5th Cir. 1973).

The BOP—not the courts—has the statutory authority to "designate the place of a prisoner's imprisonment." 18 U.S.C. § 3621(b); *see also United States v. Chaney*, 823 F. App'x 278, 279 (5th Cir. 2020) (per curiam) ("The [BOP] has the sole authority to designate a prisoner's place of incarceration.") (citing § 3621(b); *United States v. Voda*, 994 F.2d 149, 151–52 (5th Cir. 1993)). The BOP's "designation of a place of imprisonment … is not reviewable by any court." 18 U.S.C. § 3621(b).

"The term 'imprisonment' refers to any type of custody, including custody in a [community] correctional facility or home confinement program." *Moresco v. United States*, 982 F.2d 529 (10th Cir. 1992) (citing 18 U.S.C. § 3624(c)); *United States v. Jalili*, 925 F.2d 889, 894 (6th Cir. 1991); *United States v. Dragna*, 746 F.2d 457, 458 (9th Cir.1984); *but see Mihailovich v. Berkebile*, No. 3:06-CV-1603-N, 2007 WL 942091, at *7 (N.D. Tex. Mar. 28, 2007) ("Although [18 U.S.C. § 3621(b)] the statute does not define 'penal or correctional facility,' no one disputes that a RRC or halfway house qualifies. Conversely, home confinement would certainly not qualify."). Consequently, 18 U.S.C. § 3621(b) gives primary authority to the executive branch over any petition pertaining to a prisoner's place of confinement. *See Jalili*, 925 F.2d at 892; *Dragna*, 746 F.2d at 458.

5

Therefore, the Court finds it is without authority to order Carrasco's placement in an RRC or HC. *See United States v. Abdulqader*, No. 20-10891, 2021 WL 6102210, at *2 (5th Cir. Dec. 22, 2021) (per curiam) ("This court cannot directly order [prisoner] to serve out the remainder of his term in home confinement.") (citing *United States v. Sneed*, 63 F.3d 381, 388 n.6 (5th Cir. 1995)); *see also Prows v. Federal Bureau of Prisons*, 981 F.2d 466, 469 (10th Cir. 1992) ("Nothing in § 3624(c) indicates any intention to encroach upon the Bureau's authority to decide where the prisoner may be confined during the pre-release period.")

Additionally, a federal prisoner is not entitled to "[u]nlimited Home Confinement / Halfway House time." Pet'r's Pet., ECF No. 1 at 7. The maximum time for a prisoner's placement in a pre-release community correctional facility is twelve months. 18 U.S.C. § 3624(c). The maximum time for a prisoner's placement in home confinement is the shorter of ten percent of the term of imprisonment of that prisoner or six months. *Id*.

Here, Carrasco's release date is not until July 5, 2026. He is therefore not eligible for home confinement under § 3624(c) because his remaining term of imprisonment exceeds six months. He is also not eligible to any other form of prerelease custody under § 3624(c), such as placement at an RRC, because his remaining term of imprisonment exceeds 12 months.

**C. Earned Time Credits (ETCs) under the First Step Act**

Carrasco suggests that the BOP has improperly denied him ETCs. Pet'r's Pet., ECF No. 1 at 7. He asks the Court to order the Respondent to award him the ETCs that he believes he is due and immediately place him in pre-release custody. *Id.* 8.

The FSA creates incentives to encourage prisoners to participate in evidence-based recidivism reduction (EBRR) programs and productive activities (PAs). 18 U.S.C. § 3632(d). It gives qualifying prisoners the opportunity to earn ten days of ETCs for every 30 days of successful

participation in EBRR programs and PAs. *Id.* § 3632(d)(4)(A)(i). It allows qualifying offenders at a "minimum" or "low risk" of recidivating to earn an additional five days of ETCs if they do not increase their risk levels over two consecutive assessments. *Id*. § 3632(d)(4)(A)(ii). It also permits qualifying inmates to apply ETCs toward prerelease community-based placement in an RRC or HC. 18 U.S.C. § 3624(g)(2); 28 C.F.R. § 523.44(b)–(c). And, at the discretion of the Director of the BOP, it permits qualifying prisoners to apply the ETCs toward their early release to supervision. 18 U.S.C. § 3624(g)(3); 28 C.F.R. § 523.44(d).

The maximum time for prisoner placement in a pre-release RRC is twelve months. 18 U.S.C. § 3624(c). The maximum time for prisoner placement in home confinement is the shorter of (1) ten percent of the term of imprisonment of that prisoner, or (2) six months. *Id*.

As of December 2, 2024, Carrasco had earned approximately 480 ETCs. Resp't's Answer, Ex. 2, Decl. of Christine Wohld, ECF No. 10-4 at 5. The BOP applied 365 days of those ETCs—the maximum number of days allowable—toward his early transfer to supervised release, thereby moving his projected release date from July 5, 2027, to July 5, 2026. *Id.* His remaining ETCs totaled 115, and his remaining days of imprisonment totaled 580. *Id.* His credits were not "in an amount that is equal to the remainder of [his] imposed term of imprisonment." 18 U.S.C. § 3624(g)(1)(A). Consequently, Carrasco was not eligible for immediate placement in prerelease custody. Resp't's Answer, Ex. 2, Decl. of Christine Wohld, ECF No. 10-4 at 5.

On October 8, 2024, Carrasco's Unit team referred him to a Residential Reentry Management (RRM) office for a pre-release custody referral. *Id.* at 6. The Unit Team recommended a term of 271 to 365 days under the Second Chance Act plus 70 days for the ETCs Carrasco had already earned at the time of the referral. *Id.* He was eventually given a July 9, 2025, RRC transfer date. *Id.*

Carrasco fails to identify any errors in the BOP's calculation of his sentence or application of his ETCs, its determination of his transfer date to prerelease custody (July 9, 2025), or its determination of his release from custody date (July 5, 2026).

### D. Conditions of Confinement

Carrasco also complains about the quality of the water and the excessive heat at FCI La Tuna in his habeas petition. Pet'r's Pet., ECF No. 1 at 7. He maintains he cannot drink the water due to the high chlorine content and he cannot exercise safely due to the high heat index levels. *Id.*

Habeas exists solely to "grant relief from unlawful imprisonment or custody and it cannot be used properly for any other purpose." *Pierre v. United States*, 525 F.2d 933, 935–36 (5th Cir. 1976). Unconstitutional conditions of confinement—even conditions that create a risk of serious physical injury, illness, or death—do not warrant release. *Spencer v. Bragg*, 310 F. App'x 678, 679 (5th Cir. 2009) (citing *Carson*, 112 F.3d at 820–21). Even allegations of mistreatment that amount to cruel and unusual punishment do not nullify an otherwise lawful incarceration or detention. *Cook v. Hanberry*, 596 F.2d 658, 660 (5th Cir. 1979). "If a favorable determination ... would not automatically entitle [the prisoner] to accelerated release, ... the proper vehicle is a [civil rights] suit." *Carson v. Johnson*, 112 F.3d 818, 820–21 (5th Cir. 1997).

Thus, courts have consistently dismissed § 2241 petitions challenging conditions of confinement for lack of subject matter jurisdiction. *E.g., Boyle v. Wilson*, 814 F. App'x 881, 882 (5th Cir. 2020) (per curiam) (affirming dismissal of § 2241 petition challenging conditions of confinement for lack of jurisdiction).

In his complaints about the quality of the water and the excessive heat, Carrasco attacks his conditions of confinement independently of any question related to the fact or duration of his detention. A favorable determination as to his complaints "would not automatically entitle [him]

to accelerated release." *Falcetta*, 2024 WL 890124, at *2. His claims alleging violations of his civil rights are not cognizable in a habeas review.

## CONCLUSIONS AND ORDERS

The Court concludes that Carrasco has not only failed to exhaust his administrative remedies but also has no constitutional or statutory right through a § 2241 petition to have the Court (1) ensure the BOP applies all his claimed ETCs toward his sentence, (2) order the BOP place him in an RRC or HC, or (3) resolve his quality-of-life complaints. Accordingly, the Court further concludes that it lacks the subject matter jurisdiction required to determine the validity of Carrasco's claims in his § 2241 petition. The Court therefore enters the following orders:

**IT IS ORDERED** that Erbey Carrasco's "Petition for Writ of Habeas corpus under 28 U.S.C. § 2241" (ECF No. 1) is **DISMISSED WITHOUT PREJUDICE** for failure to exhaust.

**IT IS FURTHER ORDERED** that all pending motions, if any, are **DENIED** as moot.

**IT IS FURTHER ORDERED** that the District Clerk shall **CLOSE** this case.

**SIGNED** this 18th day of March 2025.

_____
**LEON SCHYDLOWER**
**UNITED STATES DISTRICT JUDGE**